IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| PATRICK SHAW, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 13 C 5189 |
| | ) |
| CITIBANK, N.A. et al., | ) |
| | ) |
| Defendants. | ) |

# MEMORANDUM OPINION

SAMUEL DER-YEGHIAYAN, District Judge

This matter is before the court on Defendants' motion to dismiss. For the reasons stated below, the motion to dismiss is granted.

# BACKGROUND

Plaintiff Patrick Shaw (Shaw) claims that he entered into an Investment Management Agreement (IMA) with Defendant Citibank, N.A. (Citibank). When Shaw makes his trades under the IMA, Citibank has allegedly consistently applied its T+3 settlement cycle to make such funds available to Shaw, which means that the funds from a trade are not made available until after three banking days following the trade date. According to Shaw, Citibank is now able to make funds available instantly and should credit the proceeds to traders promptly. Shaw seeks to bring

1

claims on behalf of himself and a proposed class. Shaw includes in the complaint breach of fiduciary duty claims (Count I), breach of contract claims (Count II), breach of implied contract and covenant of good faith and fair dealing claims (Count III), Illinois Consumer Fraud and Deceptive Business Practices Act (Fraud Act), 815 ILCS 505/1 *et seq.*, claims (Count IV), and restitution and unjust enrichment claims (Count V). Defendants now move to dismiss all claims.

## LEGAL STANDARD

In ruling on a motion to dismiss brought pursuant to Federal Rule of Civil Procedure 12(b)(6) (Rule 12(b)(6)), the court must draw all reasonable inferences that favor the plaintiff, construe the allegations of the complaint in the light most favorable to the plaintiff, and accept as true all well-pleaded facts and allegations in the complaint. *Appert v. Morgan Stanley Dean Witter, Inc.*, 673 F.3d 609, 622 (7th Cir. 2012); *Thompson v. Ill. Dep't of Prof'l Regulation*, 300 F.3d 750, 753 (7th Cir. 2002). A plaintiff is required to include allegations in the complaint that "plausibly suggest that the plaintiff has a right to relief, raising that possibility above a 'speculative level'" and "if they do not, the plaintiff pleads itself out of court." *E.E.O.C. v. Concentra Health Services, Inc.*, 496 F.3d 773, 776 (7th Cir. 2007)(quoting in part *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1965 (2007)); *see also Morgan Stanley Dean Witter, Inc.*, 673 F.3d at 622 (stating that "[t]o survive a motion to dismiss, the complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face," and that "[a] claim has

facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged")(quoting *Ashcroft v. Iqbal*, 556 U.S. 662 (2009))(internal quotations omitted).

## DISCUSSION

Defendants argue Shaw's claims are preempted by federal law. Defendants concede that there is no express preemption foreclosing Shaw's claims, but Defendants argue that Shaw's claims are barred due to implied preemption. (Mem. Dis. 6). Where there is no express statement by the federal government indicating preemption, preemption may still exist under two types of implied preemption. *Planned Parenthood of Indiana, Inc. v. Commissioner of Indiana State Dept. Health*, 699 F.3d 962, 984-85 (7th Cir. 2012). Field preemption exists when a "federal regulatory scheme is so pervasive or the federal interest so dominant that it may be inferred that Congress intended to occupy the entire legislative field. . . ." *Id.* Conflict preemption exists "when state law conflicts with federal law to the extent that 'compliance with both federal and state regulations is a physical impossibility,' or the state law 'stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.'" *Id.* (quoting *Arizona v. United States*, 132 S.Ct. 2492 (2012)). Since two alternatives are covered under the conflict preemption, it can be subdivided into its "impossibility" form and "obstacle" form. *Id.* In the instant action, Defendants argue that Shaw's claims are preempted under

the obstacle form of conflict preemption by 15 U.S.C. § 78q-1 (Section 78q-1) of the Securities Exchange Act of 1934, and by the Securities Litigation Uniform Standards Act of 1998 (SLUSA), 15 U.S.C. § 78bb(f). (Mem. Dis. 8-9, 13).

I. Preemption by Section 78q-1

Defendants' contend that Shaw's claims are preempted by Section 78q-1. Pursuant to Section 78q-1, Congress authorized the U.S. Securities and Exchange Commission (SEC) to create national guidelines for the settlement of trades. *Id.* Congress indicated that it was vesting the SEC with such authority to ensure necessary objectives are met such as "[t]he prompt and accurate clearance and settlement of securities transactions," and "[t]he linking of all clearance and settlement facilities and the development of uniform standards and procedures for clearance and settlement . . . ." 15 U.S.C. § 78q-1(a). The SEC acting pursuant to the authority given to it in Section 78q-1, enacted Rule 15c6-1, which provides that the prompt and accurate clearance and settlement of securities transactions is accomplished if the broker-dealer settles a security transaction by the third business day after the date the trade was initiated (T+3 Standard). 17 C.F.R. § 240.15c6-1.

Defendants argue that the SEC has established the T+3 Standard and that if this court found that Citibank should handle trades in a more expedited fashion, it would open the door to different requirements between brokers throughout the United States. Defendants are correct that the SEC has established that the T+3 Standard is an accepted manner in which to handle trades and that Shaw is seeking to

impose a more stringent standard on Citibank. Such an imposition in this case would require the court to assess the capabilities of Citibank to settle trades in order to determine a proper time frame for such trades. Based on the legal findings proposed by Shaw in the instant action, brokers across this nation may face legal action as well. Shaw has not shown how such a piecemeal collection of separate class actions against certain brokers would result in any sort of uniform standard in the trading industry and such a result would not serve judicial economy. Thus, the claims brought by Shaw in the instant action present a significant obstacle to the goal set forth in Section 78q-1, which instructs the SEC to ensure the development of uniform standards and procedures for clearance and settlement. Shaw argues that there will be uniform standards because he is seeking to bring this action on behalf of a national class. However, Shaw is merely seeking in this case to address trades handled by Citibank. The proposed class does not relate to other brokers and Shaw has failed to show that any findings in this case would be universally applicable for all brokers. Also, if this court were to impose different standards than the SEC's T+3 Standard based on the Illinois state law that is the basis for Shaw's claims, it would create the risk of a patchwork of differing standards from state to state across the country.

The SEC has been given the authority to regulate clearance and settlement matters and it has done so pursuant to 17 C.F.R. § 240.15c6-1. Shaw is seeking to render the T+3 Standard set forth by the SEC meaningless, by asking this court to impose a more stringent rule. The relief sought by Shaw is not appropriate in this

federal litigation. *See Whistler Investments, Inc. v. Depository Trust and Clearing Corp.*, 539 F.3d 1159, 1166 (9th Cir. 2008)(noting that the procedure at issue was "a direct challenge to Commission-approved rules" and that "[s]uch a claim is federally preempted under conflict preemption"). Shaw's claims in this action are thus preempted by Section 78q-1.

    The court also notes that even though Shaw's claims are preempted and Shaw claims Citibank has acted "unfairly," Shaw is not without remedies. (Compl. Par. 55). Shaw contends that the T+3 Standard involves "inefficient and out-of-date processes," and that the modern "instantaneous nature of electronic trades" renders the T+3 Standard unfair. (Compl. Par. 47, 55). Defendants disagree with Shaw's assessment as to the viability of Shaw's proposed instant settlement procedure, explaining why the T+3 Standard is still necessary due to the intermediaries involved in transactions. (Mem. Dis. 3). Defendants point out, Shaw can present his arguments to the SEC, which is the entity charged by Congress with overseeing the national settlement system. (Mem. Dis. 2). Defendants point out that the T+3 Standard was itself established in 1993 after the SEC considered comments from industry participants, and that there are means for individuals such as Shaw to petition the SEC to seek to amend the regulations when appropriate. (Mem. Dis. 5, 7, 12). In addition, the court notes that even if Shaw is not seeking to challenge the SEC regulations and it is Citibank's services that Shaw is dissatisfied with, Shaw has not shown that he is unable to seek the services of another broker in the marketplace with services more to his liking.

II. Preemption by SLUSA

Defendants contend that Shaw's claims are also preempted under SLUSA. Generally, "most state-law claims that rest on statements in, or omissions from, documents covered by the federal securities laws" are preempted by SLUSA. *Dixon v. ATI Ladish LLC*, 667 F.3d 891, 894 (7th Cir. 2012)(stating that "[p]reemption under SLUSA is a defense rather than a limit on subject-matter jurisdiction"). The Seventh Circuit has indicated that SLUSA is deemed to preempt a claim "only if:" (1) the claim "is brought by a private party," (2) the claim "is brought as a covered class action, (3) the claim "is based on state law," (4) the plaintiff "alleges that the defendant misrepresented or omitted a material fact (or employed a manipulative device or contrivance)," and (5) the plaintiff "asserts that defendant did so in connection with the purchase or sale of a covered security." *Erb v. Alliance Capital Management, L.P.*, 423 F.3d 647, 651 (7th Cir. 2005).

Shaw argues that he did not plead any fraud, misrepresentation, or the use of a manipulative or deceptive device and that his claims are "largely contract-based." (Ans. Dis 11, 13). Although Shaw contends that his claims "do not sound in fraud or misrepresentation," his pleadings indicate otherwise. (Ans. Dis. 14). Shaw brings claims in this case against Defendants under the Fraud Act in Count IV. (Compl 11). Although in Count IV Shaw references "unfair business acts," Shaw also separately references "deception, fraud, false pretense, false promise, misrepresentation, or the concealment, suppression, or omission of any material fact." (Compl. 44, 45). Shaw

7

alleges in his complaint that Defendants are holding onto "the proceeds of trades for three days longer than is actually prompt in light of modern technology" and that during those three days Defendants keep the funds in some "other account" to earn interest during the three days. (Compl. Par. 14, 16). Shaw does not allege that Defendants informed their customers that Defendants have the logistical capabilities to settle transactions instantly and or that Defendants instead choose to keep the customers' money for three days in a separate account in order to collect interest. Nor are there facts in the complaint that would suggest Defendants' customers are aware of such alleged conduct. Thus, Shaw's claims are premised on more than simply unfair business practices. Shaw's claims are premised on alleged deception and concealment by Defendants. The Seventh Circuit has indicated that even absent explicit allegations of deception and fraud, preemption under SLUSA existed "if the allegations of the complaint make it likely that an issue of fraud will arise in the course of the litigation. . . . ." *Brown v. Calamos*, 664 F.3d 123, 128-29 (7th Cir. 2011). Shaw's allegations that Defendants covertly used customers' funds for Defendants' benefit has made deception and fraud an issue in this case that is intertwined with Shaw's contractual-related claims. Therefore, the claims in this action are preempted by SLUSA as well as by Section 78q-1. Based on the above, Defendants' motion to dismiss is granted.

## CONCLUSION

Based on the foregoing analysis, Defendants' motion to dismiss is granted.

_____
Samuel Der-Yeghiayan
United States District Court Judge

Dated: December 19, 2013